**VEDDER PRICE (CA), LLP**
Michael Quinn, Bar No. 198349
mquinn@vedderprice.com
Deborah A. Hedley, Bar No. 276826
dhedley@vedderprice.com
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T:  +1 424 204 7700
F:  +1 424 204 7702

Attorneys for Defendants
MECHANICAL TOOL & ENGINEERING
COMPANY, GREGORY STAFFORD
NORDLOF, GERARD M. PALMERSHEIM,
DAVID E. PETERSON, RICHARD
THURMAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.T.I HYDRAULICS, INC., A.K.A. KTI HYDRAULICS INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GERARD M. PALMERSHEIM, A.K.A. JERRY PALMERSHEIM, an individual; MECHANICAL TOOL & ENGINEERING CO., an Illinois corporation, D.B.A. and A.K.A. MTE HYDRAULICS, D.B.A. and A.K.A. MTE HYDRAULICS INC.; GREGORY STAFFORD NORDLOF, A.K.A. GREG NORDLOF, an individual and president of MECHANICAL TOOL & ENGINEERING CO., DAVID E. PETERSON, A.K.A. DAVID N. | Case No. 8:22-cv-00110-JLS-JDE<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12 (b)(2), (b)(3) & (b)(6); OR, IN THE ALTERNATIVE TO TRANSFER TO THE NORTHERN DISTRICT OF ILLINOIS**<br><br>**Date:　August 12, 2022**<br>**Time:　10:30 a.m.**<br>**Place:　350 West First Street**<br>**　　　　Courtroom 8A**<br>**　　　　Los Angeles, CA 90012** |

PETERSON, an individual; RICHARD THURMAN, A.K.A. RICH THURMAN, A.K.A. RICHARD J. THURMAN, A.K.A. RICH J. THURMAN, A.K.A. RICHARD N. THURMAN, A.K.A. RICH N. THURMAN, an individual; and DOES 1 through 10, inclusive,

    Defendants.

Complaint filed: January 21, 2022

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

VP/#55270197.3

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................... 1

II. ARGUMENT .......................................................................................................... 2

    A. The Court Should Dismiss This Action because it Does Not Have Personal Jurisdiction over Defendants ......................................... 2

        1. This Court Does Not Have General Jurisdiction Over Defendants ....................................................................................... 2

        2. This Court Also Lacks Special Jurisdiction ............................... 4

    B. This Action Should Be Dismissed because the Central District of California Is an Improper Venue ...................................................... 9

    C. If the Court Does Not Dismiss, this Case Should Be Transferred to Illinois ........................................................................... 11

        1. The Court May Transfer to the Northern District of Illinois Pursuant to 28 U.S.C. §1406 ...................................... 11

        2. The Court May Transfer to the Northern District of Illinois Pursuant to 28 U.S.C. §1404 ...................................... 11

        3. The Convenience of the Parties & Witnesses, and the Interests of Justice Weigh in Favor of Transfer ...................... 12

    D. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ..... 14

        1. Legal Standard ............................................................................ 14

        2. The Complaint Does Not State A Claim For Breach of Fiduciary Duty ........................................................................... 15

        3. The Complaint Does Not State A Claim for Intentional Interference with Prospective Economic Advantage ............... 15

        4. The Complaint Does Not State a Claim for Breach of Contract Where the Noncompete Agreement is Void Under California Law ................................................................... 16

        5. The Complaint Does Not State A Claim for Unfair Competition ................................................................................ 18

        6. The Complaint Does Not State A Claim for Trade Secret Misappropriation ........................................................................ 19

III. CONCLUSION ..................................................................................................... 25

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

AFTG-TG, LLC v. Nuvoton Tech. Corp.,
689 F.3d 1358 (Fed. Cir. 2012) .........................................................................7

Agile Sourcing Partners, Inc. v. Dempsey,
No. EDCV21773JGBSPX, 2021 WL 4860693 (C.D. Cal. July 15,
2021) ..............................................................................................................19, 21

Alta Devices, Inc. v. LG Elecs., Inc.,
343 F. Supp. 3d 868 (N.D. Cal. 2018)................................................................19

AlterG Inc. v. Boost Treadmills LLC,
388 F. Supp. 3d 1133 (N.D. Cal. 2019)..............................................................20

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ............................................................................................15

Axiom Foods, Inc. v. Acerchem Int'l, Inc.,
874 F.3d 1064 (9th Cir. 2017)..............................................................................5

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007) ............................................................................................15

Bot M8 LLC v. Sony Corp. of Am.,
4 F.4th 1342 (Fed. Cir. 2021)..............................................................................22

California Expanded Metal Prod. Co. v. Klein,
No. CV1800242DDPMRWX, 2018 WL 2041955 (C.D. Cal. Apr.
30, 2018) ........................................................................................................10, 11

Callaway Golf Corp. v. Royal Canadian Golf Ass'n,
125 F. Supp. 2d 1194 (C.D. Cal. 2000)................................................................7

Calvao v. Superior Ct.,
201 Cal. App. 3d 921 (Ct. App. 1988) ...............................................................15

Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,
20 Cal. 4th 163 (1999)........................................................................................18

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF AUTHORITIES**
(continued)

**Page**

CIPM, LLC v. Stryker Corp.,
No. 8:20-cv-02364-JLS-ADS, 2021 WL 3362027 (C.D. Cal. June 29, 2021) ........................................................................................... 22

Cisco Sys., Inc. v. Chung,
462 F. Supp. 3d 1024 (N.D. Cal. 2020) ............................................... 19

Commil USA, LLC v. Cisco Sys., Inc.,
575 U.S. 632 (2015) ............................................................................ 24

Ctr. for Med. Progress v. Becerra,
No. 820CV00891JLSDFM, 2020 WL 7786536 (C.D. Cal. Nov. 12, 2020) .............................................................................................. 11, 12

Doe v. American Nat'l Red Cross,
112 F.3d 1048 (9th Cir. 1997) ............................................................... 7

Edwards v. Arthur Anderson,
44 Cal. 4th 937 (2008) ......................................................................... 16

Emazing Lights LLC v. De Oca,
No. SACV-15-1561 (AG) (Ex), 2016 WL 3658945 (C.D. Cal. Jan. 7, 2016) ................................................................................................ 21

FootBalance System Inc. v. Zero Gravity Inside, Inc.,
No. 15-1058, 2016 WL 903681 (S.D. Cal. Feb. 8, 2016) .................... 22

Freestream Aircraft (Berm.) Ltd. v. Aero L. Grp.,
905 F.3d 597 (9th Cir. 2018) ................................................................. 8

Golden v. California Emergency Physicians Med. Grp.,
896 F.3d 1018 (9th Cir. 2018) ............................................................. 17

Goodyear Dunlop Tires Operations, S.A. v. Brown,
564 U.S. 915 (2011) .............................................................................. 4

Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.,
820 F. Supp. 503 (C.D. Cal. 1992) ...................................................... 11

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES
(continued)

**Page**

Green Fitness Equip. Co., LLC v. Precor Inc.,
No. 18-CV-00820-JST, 2018 WL 3207967 (N.D. Cal. June 29, 2018) ........................................................................................................ 10

Ileto v. Glock, Inc.,
349 F.3d 1191 (9th Cir. 2003) .............................................................. 14

InteliClear, LLC v. ETC Global Holdings, Inc.,
978 F.3d 653 (9th Cir. 2020) ............................................................... 20

Intellectual Pixels Ltd. v. Sony Interactive Entm't LLC,
No. SACV 20-1422 JVS (KESx), 2020 WL 7872961 (C.D. Cal. Nov. 20, 2020) ....................................................................................... 25

International Mfg. Co. v. Landon, Inc.,
336 F.2d 723 (9th Cir. 1964) ............................................................... 24

Invisible Dot, Inc. v. DeDecker,
No. 2:18-cv-08168-RGK-RAO, 2019 WL 1718621 (C.D. Cal. Feb. 6, 2019) ................................................................................................ 21

Kanter v. Warner-Lambert Co.,
265 F.3d 853 (9th Cir. 2001) ................................................................. 4

Keeton v. Hustler Mag., Inc.,
465 U.S. 770 (1984) ............................................................................... 5

King v. Am. Family Mut. Ins. Co.,
632 F.3d 570 (9th Cir. 2011) ................................................................. 2

Korea Supply Co. v. Lockheed Martin Corp.,
29 Cal. 4th 1134 ................................................................................... 16

Lou v. Belzberg,
834 F.2d 730 (9th Cir. 1987) ............................................................... 13

Mavrix Photo, Inc. v. Brand Techs, Inc.,
647 F.3d 1218, 1225 (9th Cir. 2011) ..................................................... 3

McRO, Inc. v. Namco Bandai Games Am., Inc.,
23 F. Supp. 3d 1113 (C.D. Cal. 2013) ................................................. 24

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF AUTHORITIES**
(continued)

**Page**

Milton v. TruePosition, Inc.,
  No. C 08-3616 SI, 2009 WL 323036 (N.D. Cal. Feb. 9, 2009) ........................ 13

O'Byrne v. Santa Monica-UCLA Med. Ctr.,
  94 Cal. App. 4th 797 (2001).................................................................................. 15

Ortolani v. Freedom Mortg. Corp.,
  No. EDCV171462JGBKKX, 2017 WL 10518040 (C.D. Cal. Nov.
  16, 2017)............................................................................................................ 18

Pebble Beach Co. v. Caddy,
  453 F.3d 1151 (9th Cir. 2006)................................................................................ 2

Piedmont Label Co. v. Sun Garden Packing Co.,
  598 F.2d 491 (9th Cir. 1979)................................................................................. 9

Pokorny v. Quixtar, Inc.,
  601 F.3d 987 (9th Cir. 2010)............................................................................... 18

Rocke v. Canadian Auto. Sport Club,
  660 F.2d 395 (9th Cir. 1981)............................................................................ 2, 8

Sanho Corp. v. Intelliarmor,
  No. 820CV00735JLSDFM, 2020 WL 6153265 (C.D. Cal. Sept. 25,
  2020).................................................................................................................. 23

Schwarzenegger v. Fred Martin Motor Co.,
  374 F.3d 797 (9th Cir. 2004)............................................................................ 3, 4

In re Seagate Tech., LLC,
  497 F.3d 1360 (Fed. Cir. 2007)........................................................................... 24

TC Heartland LLC v. Kraft Foods Grp. Brands LLC.,
  137 S. Ct. 1514 (2017) ..................................................................................... 9, 10

Vendavo, Inc. v. Price f(x) AG,
  No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23,
  2018).................................................................................................................. 20

Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.,
  178 F. Supp. 2d 1099 (C.D. Cal. 2001)............................................................... 19

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF AUTHORITIES
(continued)

**Page**

WBIP, LLC v. Kohler Co.,
  829 F.3d 1317 (Fed. Cir. 2016) ...................................................................24

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,
  433 F.3d 1199 (9th Cir. 2006) ......................................................................2

Zeta-Jones v. Spice House,
  372 F. Supp. 2d 568 (C.D. Cal. 2005) ...................................................13, 14

Ziegler v. Indian River Cty.,
  64 F.3d 470 (9th Cir. 1995) ..........................................................................5

**Statutes**

18 U.S.C. § 1836 .........................................................................................19

18 U.S.C. § 1839(3) .....................................................................................20

28 U.S.C. § 1391(b)-(c) .................................................................................9

28 U.S.C. § 1400(b) ..........................................................................9, 10, 12

28 U.S.C. § 1404 ..........................................................................................11

28 U.S.C. § 1406 ............................................................................................9

Cal. Bus. & Prof. Code § 16600 ..............................................................16, 17

Cal. Code Civ. P. § 410.10 .............................................................................2

Cal. Code Civ. P. § 3426 ...............................................................................19

**Other Authorities**

Fed. R. Civ. P. R. 12 ...................................................................................2, 9

Fed. R. Civ. P. R. 8 ......................................................................................22

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

## I.    INTRODUCTION

Plaintiff KTI Hydraulic, Inc ("KTI" or "Plaintiff") has attempted to pull midwestern defendants Mechanical Tool & Engineering Co., an Illinois Corporation ("MTE"), Gregory Nordlof ("Nordlof"), Jerry Palmersheim ("Palmersheim"), David Peterson ("Peterson") and Richard Thurman ("Thurman") (collectively, "Defendants") into court in the Central District of California via its Complaint (the "Complaint").  However, all of the Defendants are domiciled within a short driving distance to MTE's headquarters in Rockford, Illinois and are not subject to jurisdiction here.

To the extent Plaintiff seeks to pull the Defendants into court in California by making a long-arm argument, such an argument fails where any "contacts" among these Defendants and California are merely incidental, and Defendants had **no California contacts prior to the filing of this lawsuit** related to the product line (the "VE Product Line") upon which Plaintiff argues Defendants infringed.  None of the Defendants have traveled to California for any work related to the VE Product Line, and only one Defendant has ever traveled to California to visit a non-VE Product Line MTE customer in the past five years. Notably, Plaintiff, who carries the burden to establish jurisdiction, has not attempted to allege any facts that would be sufficient to keep these foreign Defendants before this Court. Rather, the facts show that there is no personal jurisdiction in California over these Defendants.

Moreover, venue is also improper in California.  After the Supreme Court's seminal decision in <u>Heartland</u>, it is clear that a patent infringement lawsuit may only proceed where MTE is incorporated and has its principal place of business which is, of course, Illinois. The Court should grant this Motion to Dismiss.

In the alternative, Defendants request that the Court transfer the case to the Northern District of Illinois where MTE is headquartered and has its physical business, where the majority of its party and nonparty witnesses reside, including the other Defendants, and where the interests of justice will be served via a transfer.

Finally, should this Court reach the merits, all of the causes of action in KTI's Complaint should be dismissed for failure to state a claim.

## II.     ARGUMENT

### A.     The Court Should Dismiss This Action because it Does Not Have Personal Jurisdiction over Defendants

Defendants request that the Court dismiss this action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Personal jurisdiction is proper where it is permitted by a long-arm statute and the exercise of jurisdiction does not violate federal due process. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). California's long-arm statute permits a court to exercise jurisdiction "on any basis not inconsistent with the Constitution of this State or of the United States." Cal. Code Civ. P. § 410.10. Thus, the Court need only determine whether the assertion of personal jurisdiction over the Defendants violates due process. Rocke v. Canadian Auto. Sport Club, 660 F.2d 395, 398 (9th Cir. 1981) (finding no general or specific jurisdiction over a party where it did not have a regular place of business in California and where the reasonableness inquiry showed only cursory contacts with California). Personal jurisdiction over a non-resident defendant may be either general or specific, depending on the nature of the contacts between a defendant and the forum state.

### 1.     This Court Does Not Have General Jurisdiction Over Defendants

General jurisdiction exists when "a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be "present" in that forum for all purposes." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006). This standard is high. Indeed, for a Court to have general jurisdiction over a corporate defendant, the defendant essentially needs to have set up a "home" on the Court's turf. See King v. Am. Family Mut. Ins. Co., 632 F.3d 570, 579 (9th Cir. 2011).

Plaintiff's Complaint does not attempt to plead general jurisdiction, nor could it, where Defendants are at "home" elsewhere.  Rather, the Complaint only alleges that "[u]pon information and belief, the Court has personal jurisdiction over Defendants in that they are doing business within this judicial district, are committing ongoing acts of trade secret misappropriation, patent infringement and other wrongdoing in this judicial district, solicit and transact business within this judicial district, have committed intentional acts expressly aimed at the forum jurisdiction that have caused harm to Plaintiff KTI that the Defendants know are likely to be suffered in the forum jurisdiction, and/or are otherwise subject to the Court's personal jurisdiction. Compl., ¶13.  It then pleads several conclusory allegations regarding sales, marketing and advertisement in California upon "information and belief." Id. However, the facts show that Defendants do not have the substantial, continuous and systematic contacts necessary to establish that general personal jurisdiction in California would be proper.

### a.    No General Jurisdiction Over MTE

MTE is a small family-owned company with its only physical location in Rockford, Illinois.  Nordlof Decl., ¶2.  Nearly all of MTE's approximately 180 employees are based in Illinois with the vast majority working on-site, except for a handful of employees who began working remotely during the pandemic. See id., ¶4. MTE has no physical office or manufacturing in California, it does not purchase supplies from California, it does not have a website registered in California, nor does it have any records or products stored in California. Id., ¶¶ 5-8.

MTE's clear domicile in Illinois is insufficient for KTI to clear the hurdle of applying general jurisdiction in California, which is an "exacting standard." See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004).  The mere act of engaging in commerce with residents of the forum state is not the kind of activity that approximates physical presence within the state's borders.  See Mavrix Photo, Inc. v. Brand Techs, Inc., 647 F.3d 1218, 1225 (9th Cir. 2011).

### b.  No General Jurisdiction Over Individual Defendants

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). The Complaint makes no effort to assert general jurisdiction over the individual Defendants, whom Plaintiff capitulates are domiciled in Illinois (Nordlof, Peterson and Thurman) and Wisconsin (Palmersheim). Compl., ¶¶ 2, 4-6; see also Nordlof Decl., ¶14; Palmersheim Decl., ¶4; Thurman Decl., ¶8; Peterson Decl., ¶5. That Palmersheim ever lived in California does not play into the jurisdictional analysis, for only the state in which he lives when the action commences counts for the purposes of determining general jurisdiction. Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 3-D ("Personal jurisdiction cannot be based solely on the fact that defendant had been domiciled in the forum state at some earlier time. For due process purposes, defendant's domicile "contact" with the forum state must be intact when the action is filed.")

### 2.  This Court Also Lacks Special Jurisdiction

To establish special personal jurisdiction, the Plaintiff must prove that (1) The nonresident Defendants did some act or consummated some transaction with the forum or performed some act by which they purposefully availed themselves of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; and (2) [t]he claim must be one which arises out of or results from the Defendants' California-related activities. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). If, and only if, Plaintiff meets this burden, would the burden then shift to Defendants to prove that the exercise of specific personal jurisdiction would be unreasonable or that it does not comport with fair play and substantial justice. See id. "Each defendant's contacts with the forum

State must be assessed individually." Keeton v. Hustler Mag., Inc., 465 U.S. 770, 781 (1984).

### a.      Defendants Did Not Purposely Direct Activities At California

The Ninth Circuit applies "different purposeful availment tests to contract and tort cases." Ziegler v. Indian River Cty., 64 F.3d 470, 473 (9th Cir. 1995) (citations omitted). "Consistent with the Supreme Court's holding in Burger King, merely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident." Id. Here, there is only one cause of action sounding in contract, the claim for breach of contract against Palmersheim. Compl., ¶73 et. seq. The contract at issue (Compl., Ex. 3) has no forum selection clause, and Palmersheim's act of entering into the (unenforceable) contract with a California company is an insufficient basis to pull him into Court in California. See Ziegler, 64 F.3d at 473.

Where cases sound in tort, the Ninth Circuit employs the "purposeful direction" test, meaning KTI must show that the Defendants "(1) committed an intentional act, (2) expressly aimed at California, (3) causing harm that the Defendants knew was likely to be suffered in California. Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1069 (9th Cir. 2017) (citation omitted). The inquiry is "defendant-focused," meaning that "the relationship between the nonresident defendant, the forum, and the litigation must arise out of contacts that the defendant himself creates with the forum state." Id. at 1068 (internal quotations and citation omitted). Further, "the minimum contacts analysis examines 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.' It follows that 'a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" Id. (citations omitted).

Paragraph 13 of the Complaint makes conclusory allegations about jurisdiction, but the factual allegations of the Complaint are completely devoid of a single allegation as to any act or acts that Defendants purportedly aimed at California. Compl., ¶13. The only allegation as to an intentional act in California is that Defendants "manufacture or have caused the manufacturing, use, sale, offer for sale, and/or import into California and throughout the United States of hydraulic power units that infringe upon Plaintiff KTI's rights in Plaintiff KTI's '599 Patent and '765 Patent, including but not limited to Defendant MTE's "VE" product line (collectively hereinafter, the "Accused Products"), all stemming from the misappropriation of Plaintiff KTI's trade secrets and other Confidential Information by Defendant Palmersheim and DOES 1 through 5." Compl., ¶45.

The Complaint contains no specific allegations as to when, or how the "manufacture, use, sale, offer for sale, and/or import into California" allegedly occurred.  Further, there is no allegation that any of the Defendants intended to cause harm in California.  As set forth in the accompanying declarations, Defendant MTE did not have any shipments of the allegedly infringing VE Product Line to California prior to Plaintiff's Complaint being filed.   Thurman Decl., ¶¶4-5.   Individual Defendants Nordlof, Palmersheim, Thurman and Peterson have never caused any MTE products from the VE Product Line to be sold in California, nor is there any evidence of any intentional act that they individually committed in California at all. Nordlof Decl., ¶¶4, 14; Palmersheim Decl., ¶¶4-6; Thurman Decl., ¶¶7-11; Peterson Decl., ¶¶2-7. Most of the Defendants have nothing to do with the VE Product Line or with California.  There is simply no evidence or allegation that Defendants have expressly aimed any allegedly wrongful conduct at California and without this showing, Plaintiff cannot establish jurisdiction is proper.

**b.      The Allegations Do Not Arise Out of or Relate to Defendants' Activities in California**

For the Plaintiff to establish that its claims arise out of or result from Defendants' forum-related activity, the Plaintiff must prove that it would not have been injured "but for" the defendant's activities in California. Callaway Golf Corp. v. Royal Canadian Golf Ass'n, 125 F. Supp. 2d 1194, 1204 (C.D. Cal. 2000). Activities that are "too attenuated" do not satisfy the but-for test. Doe v. American Nat'l Red Cross, 112 F.3d 1048, 1051 (9th Cir. 1997).

MTE did not ship any products from the VE Product Line to California prior to Plaintiff's decision to file this litigation. Thurman Decl., ¶¶4-5. Even KTI appears to concede that the California VE Product Line are not the but-for cause of its damages, which it alleges to be $30,000,000 to $90,000,000. See e.g., Compl., ¶¶107-108. Since there were no VE Product Line sales in California prior to bringing this litigation, Plaintiff should also agree that acts in California were not the "but-for" cause of its alleged harm that caused it to file. See e.g. AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358, 1365 (Fed. Cir. 2012) (finding no personal jurisdiction where a cause of action for patent infringement did not arise out of isolated shipments to forum).

Further, there are no specific allegations as to any of the individual Defendants' California-related activities that allegedly damaged KTI. The Complaint makes no individualized allegations related to California for Nordlof, Thurman, or Peterson. Further, the Complaint does not tie a single incidence of Defendants' alleged wrongdoing to California, nor could it, where their contacts here have been extremely limited. Nordlof Decl., ¶15; Palmersheim Decl., ¶3 Thurman Decl., ¶¶6-7; Peterson Decl., ¶¶4, 7. Here, it is not that the allegations of forum-related activity are too attenuated to confer specific jurisdiction, it is that they are non-existent. Plaintiff has not met its burden.

### c. An Exercise of Personal Jurisdiction over Defendants Would Be Unreasonable

Finally, the exercise of specific personal jurisdiction must be reasonable in that it must comport with fair play and substantial justice. In determining reasonableness,

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

VP/#55270197.3

the Court looks to seven factors: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." Freestream Aircraft (Berm.) Ltd. v. Aero L. Grp., 905 F.3d 597, 607 (9th Cir. 2018).

First, the lack of purposeful injection by Defendants weighs against personal jurisdiction in California. As set forth above, Defendants' contacts with California are incidental and unrelated to this litigation, at best. Nordlof Decl., ¶15; Palmersheim Decl., ¶3 Thurman Decl., ¶¶6-7; Peterson Decl., ¶¶4, 7. Second, an assessment of the burden on Defendants also cuts against personal jurisdiction in California. MTE is a small family-owned company, located in Illinois. Nordlof Decl.,¶¶ 2-5. All of MTE's documents and witnesses are located in Illinois, which is where the majority of discovery in this case would occur. Id.; see also Rocke v. Canadian Auto. Sport Club, 660 F.2d 395, 399 (9th Cir. 1981). Further, all of the Defendants live in Illinois or Wisconsin, which the Complaint concedes. Compl., ¶¶2, 4-6. The Defendants' costs of defending this litigation would skyrocket if they are required to travel to a location in which they have never purposefully directed their activities, which is the very inequity jurisdictional rules are meant to avoid.

Third, there is no evidence of a conflict of sovereignty, and thus the third factor is, at most, neutral. Fourth, there is no indication that California has an interest in overseeing this litigation, which also makes the application of the fourth factor neutral to the analysis.

Fifth, the most efficient locale for the resolution of this matter is the situs where the majority of the discovery will occur, which is going to be Illinois where MTE's witnesses are located. Nordlof Decl., ¶¶5, 12. Sixth, there is no evidence that

likelihood of recovery to Plaintiff would be impacted at all by taking place in California. Rocke, 660 F.2d at 399 (holding that likelihood of recovery in Quebec, against plaintiff's objection, was not so significantly diminished to justify California taking jurisdiction). Seventh, and finally, there can be no dispute that there is another available forum in the Northern District of Illinois. On balance, where each non-neutral factor weighs against personal jurisdiction being reasonable in California, an exercise of personal jurisdiction by this Court would be unreasonable.

### B.    This Action Should Be Dismissed because the Central District of California Is an Improper Venue

Defendants alternatively move the Court for an order dismissing this action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. Section 1406. It is Plaintiff's burden to establish that venue is proper in the district where it brought the suit. Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979). Venue in federal courts is governed entirely by statute. "The patent venue statute, 28 U.S.C. § 1400(b), provides that "'[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.'" TC Heartland LLC v. Kraft Foods Grp. Brands LLC., 137 S. Ct. 1514, 1516–17 (2017). In Heartland, the Supreme Court held that a domestic corporation "resides" only in its state of incorporation for purposes of the patent venue statute.

Instead of proving that venue is proper in the Central District of California under the patent statute (as is its burden), Plaintiff completely ignored the patent venue statute and Heartland's seminal holding. Rather, Plaintiff alleged that venue was proper under 28 U.S.C. § 1391(b)-(c).[1] Compl., ¶12. This is improper because

---

[1] Even if the allegations of venue were proper, they would fail. 28 U.S.C. § 1391(c)(2) states that "For purposes of venue, a defendant corporation is deemed to reside in any judicial district in which it is subject to that court's personal jurisdiction with respect to the civil action in question. Thus, to determine whether venue is improper, the Court applies the personal jurisdiction analysis set forth above in **Section A**. Where, as discussed extensively above, personal jurisdiction is lacking in the Central District of California, and that renders it necessarily an improper venue.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

VP/#55270197.3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

as the Supreme Court clearly explained "§ 1400(b) 'is the sole and exclusive provision controlling venue in patent infringement actions, and ... is not to be supplemented by ... § 1391(c).'" Heartland, 137 S. Ct. at 1519 (citations omitted).

Plaintiff cannot find venue in the Central District under Section 28 U.S.C. § 1400(b). First, MTE is incorporated in Illinois, which is also where it resides. Similarly, all of the individual Defendants reside in the Midwest.

Second, MTE and the other Defendants do not have a regular and established place of business in California, causing venue here to fail under both prongs of Section 28 U.S.C. § 1400(b).

To the extent that KTI argues that some of the claims are properly venued here, the Central District has made short shrift of that argument. California Expanded Metal Prod. Co. v. Klein, No. CV1800242DDPMRWX, 2018 WL 2041955, at *2 (C.D. Cal. Apr. 30, 2018). In Klein, Plaintiff's complaint alleged both patent and non-patent claims. Id. However, the Central District granted a motion to transfer venue for both the patent and non-patent claims under §1400b, declining to apply the doctrine of pendent venue, stating:

> In the wake of TC Heartland's prescription that Section 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions and is not to be supplemented by § 1391(c)," the specificity-focused approach weighs against the application of pendent venue to cases involving patent claims. Indeed, for that reason, at least one court has suggested that pendent venue is categorically inapplicable to patent cases.

Id. (internal citations and quotations omitted). The Klein Court concluded: "it makes better sense to keep all the claim[s] together because they are based on the same nucleus of operative facts." Id.; see also Green Fitness Equip. Co., LLC v. Precor Inc., No. 18-CV-00820-JST, 2018 WL 3207967, at *3 (N.D. Cal. June 29, 2018) (applying a "common nucleus of operative fact" analysis to conclude that patent and non-patent cases would not need to be "bifurcated" in a venue transfer under 1400b).

The same holds true here. Plaintiff incorporates every factual pleading about its patents, and alleged patent infringement into every single cause of action. Compl.,

¶¶55, 67, 73, 79, 87, 99, 111, 119, 128. By its own allegations, KTI confirms that each and every cause of action arises out of the same nucleus of operative facts as its patent claims, and thus, venue is improper for all of its claims in the Central District of California.

**C.** **If the Court Does Not Dismiss, this Case Should Be Transferred to Illinois**

**1.** **The Court May Transfer to the Northern District of Illinois Pursuant to 28 U.S.C. § 1406(a)**

As an alternative to dismissal, the Court may, if the interests of justice are served, pursuant to 28 U.S.C. § 1406(a), transfer this action upon a finding that the Central District is an improper venue. As discussed extensively above, venue is improper in the Central District of California. But venue is proper in the Northern District of Illinois, where MTE, an Illinois corporation, (i) is subject to personal jurisdiction, (ii) maintains its offices and documents, and (iii) operates nearly all of its business interests and where the other Defendants either reside or work for MTE. As such, if this Court determines that venue is improper in the Central District of California, this action should be transferred to the Northern District of Illinois, pursuant to 28 U.S.C. § 1406(a).

**2.** **The Court May Transfer to the Northern District of Illinois Pursuant to 28 U.S.C. § 1404**

Defendants move, in the alternative, pursuant to 28 U.S.C. § 1404, to transfer venue to the Northern District of Illinois. "To support a motion for transfer, the moving party must establish: "(1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice." Ctr. for Med. Progress v. Becerra, No. 820CV00891JLSDFM, 2020 WL 7786536, at *4 (C.D. Cal. Nov. 12, 2020) (citing Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp., 820 F. Supp. 503, 506 (C.D. Cal. 1992) (citation omitted)).

a.    **This Action Could Have Been Brought in the Northern District of Illinois**

Of course, this action could have and should have been brought in the Northern District of Illinois. As established *supra*, venue under §1400(b) is only proper in the Northern District of Illinois.  MTE is an Illinois corporation, registered to do business in Illinois, with its principal place of business in Rockford, Illinois, which means that the Northern District of Illinois is the only proper venue under §1400(b). Further, Defendants Nordlof, Thurman and Peterson live in the Northern District of Illinois, and all four individual Defendants work in the Northern District of Illinois.

**3.    The Convenience of the Parties & Witnesses, and the Interests of Justice Weigh in Favor of Transfer**

"In determining the final factor—convenience of the parties and witnesses and the interests of justice—the Ninth Circuit considers "multiple factors" including: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." Ctr. for Med. Progress v. Becerra, No. 820CV00891JLSDFM, 2020 WL 7786536, at *4 (C.D. Cal. Nov. 12, 2020) (citations omitted).

It is evident that Illinois is a more convenient forum for the Defendants and party witnesses, given the location of MTE's office, the small number of people involved in day-to-day business operations, and the location of its business records. Nordlof Decl., ¶¶2-12. Moreover, the Northern District of Illinois is more convenient for each of Defendants Nordlof, Palmersheim, Thurman and Peterson who each either live in the Northern District, or within driving distance to it.  Nordlof Decl., ¶14; Palmersheim Decl., ¶4; Thurman Decl., ¶8; Peterson Decl., ¶5.   The Northern

District of Illinois is a more convenient forum for five of the six parties, and this factor weighs in favor of transfer. However, most importantly, the Northern District is more convenient for *non-party witnesses*, the two of which who have been identified live in *Illinois*. Nordlof Decl., ¶13.

Here, analysis of the "interest of justice" factors weighs in favor of transfer. With regard to factor one, there are no agreements between the parties, except for the unenforceable Noncompete Agreement with Palmersheim, which lacks any reference to forum selection. Compl., ¶30, Ex. 3. This factor weighs in favor of transfer for arguably all Defendants, given that the sole contract at issue is against public policy.

For factor two, the Northern District is equally familiar with federal patent and trade secret theft claims as is the Central District. These claims should control the venue analysis where federal courts are "fully capable of applying California law" to any claims in federal court via the court's supplemental jurisdiction. See Milton v. TruePosition, Inc., No. C 08-3616 SI, 2009 WL 323036, at *4 (N.D. Cal. Feb. 9, 2009) (citations omitted)("where a federal court's jurisdiction is based on the existence of a federal question, as it is here, one forum's familiarity with supplemental state law claims should not override other factors favoring a different forum."). This factor weighs in favor of transfer.

As to the third factor, Plaintiff clearly chose California because it is most convenient to them. And, while the Plaintiff's choice of forum is generally afforded weight in this analysis, where, as here, "the operative facts have not occurred within [in California] and [California] has no interest in the parties or the subject matter, [the plaintiff's] choice is entitled to only minimal consideration." Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987).

As for the fourth and fifth factors, MTE has had no contacts with California related to Plaintiff's claims. And because it is a small company with few employees, forcing MTE to defend itself in this District, a location remote from its day-to-day operations, would impose a significant burden. Nordlof Decl., ¶12; see, e.g., Zeta-

Jones v. Spice House, 372 F. Supp. 2d 568, 576 (C.D. Cal. 2005) (court transferred case against Nevada website operator from Central District of California to the District of Nevada because Nevada was most convenient for witnesses and it was the location of most of the relevant evidence, despite arguments that the photograph at issue was visible in California through an interactive website).  Further, as discussed above, Plaintiff is not expected to argue that the incidental business contacts MTE has had in California form the basis of Plaintiff's causes of action, or otherwise it would limit its recovery to a nominal amount, if any. The individual Defendants likewise do not have any occasion to be in California regularly—this lawsuit would likely require each to travel here more for discovery and trial more than they have ever stepped foot in the state previously.

Regarding the sixth factor, in addition to the business and life opportunities that Defendants may lose if they and MTE's other personnel are tied up in litigation in a remote forum, the Defendants would also incur significant costs associated with litigating in a court across the country. Id.

In regards to the seventh factor, to the extent necessary, compulsory process is more readily available in the Northern District of Illinois for non-party witnesses (two of whom are known to reside in Illinois), which will be able to compel nonparty witnesses to testify, which the Central District of California would, of course, not be able to do.  Nordlof Decl., ¶13. The multifactor analysis clearly favors transfer and Defendants respectfully request that if the Court does not dismiss the case, that it transfer the case to the Northern District.

### D.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

#### 1.    Legal Standard

A Rule 12(b)(6) motion "tests the legal sufficiency of the claims asserted in the complaint." Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). While "[t]he Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them," the plaintiff must plead "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## 2. The Complaint Does Not State A Claim For Breach of Fiduciary Duty

KTI alleges that Palmersheim has violated a fiduciary duty owed to it. However, it is axiomatic that employees do not owe a fiduciary duty to their employer. Calvao v. Superior Ct., 201 Cal. App. 3d 921, 923 (Ct. App. 1988); O'Byrne v. Santa Monica-UCLA Med. Ctr., 94 Cal. App. 4th 797, 811 (2001). The Complaint admits that Palmersheim was an employee of the company with job duties they assigned to him from September 1, 2014-August 21, 2020. Compl., ¶¶28-29. ("Defendant Palmersheim's primary emphasis in his job duties at KTI was focusing on the dump trailer business sector and to generate sales in such sector.") The date after hire, he signed what Plaintiff has characterized as an "Employee Confidentiality Information Agreement." Compl., ¶¶30. Plaintiff then argues that "as a result of Defendant's Palmersheim's employment… [he] owed KTI a fiduciary duty." Compl., ¶80. However, because Palmersheim was merely an employee, he owed no fiduciary duty to KTI, and thus KTI has not stated a claim for breach of a (non-existent) fiduciary duty.

## 3. The Complaint Does Not State A Claim for Intentional Interference with Prospective Economic Advantage

The Complaint also fails to state a claim for intentional interference with prospective economic advantage. To state a claim for this tort, a plaintiff must plead

"'(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.' [Citations.]" Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153(2003).  The California Supreme Court has clarified that to successfully plead the third element,  "a plaintiff must plead that the defendant engaged in an act that is wrongful apart from the interference itself." Id. at 1154. In Korea Supply, the Plaintiff met this requirement where, separate and apart from alleged interference with its prospects, it also alleged that defendants "engaged in bribery and offered sexual favors to key Korean officials in order to obtain the contract from the Republic of Korea." Id. at 1159.   Here, Plaintiff's Complaint only alleges that Palmersheim engaged in interference and intended to disrupt its prospective economic advantage.  Compl., ¶¶69-70.  However, Plaintiff has not pleaded any independently wrongful act, and this claim should be dismissed.

### 4.    The Complaint Does Not State a Claim for Breach of Contract Where the Noncompete Agreement is Void Under California Law

KTI also attempts to sue Palmersheim for breach of the agreement attached to the Complaint as "Exhibit 3" (the "Noncompete Agreement").  Compl., Ex. 3. Under California law, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600 (West).  In the seminal case Edwards v. Arthur Anderson, the California Supreme Court struck down a contractual provision that barred "an employee from (1) practicing accounting for eighteen months for any client on whose account the employee had worked in the eighteen months prior to the termination of his employment and (2) soliciting any of his former employer's clients for twelve

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

VP/#55270197.3

months following his termination." Golden v. California Emergency Physicians Med. Grp., 896 F.3d 1018, 1022 (9th Cir. 2018) (citing  44 Cal. 4th 937 (2008).

As the California Supreme Court explained "our courts have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility. The law protects Californians and ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice. It protects the important legal right of persons to engage in businesses and occupations of their choosing." Id.   The Ninth Circuit has gone on to explain that it is rare that a contractual restraint of this kind can be so insubstantial to escape scrutiny under section 16600 where "California's legislature has clearly expressed its disapproval of contracts that restrain lawful business and professional activities." Id.[2]

Here, the Noncompete Agreement makes multiple, unlawful attempts to stymie Palmersheim from working in the hydraulics industry at all.

First, Paragraph 5 of the Noncompete Agreement states that "[f]or one year following his termination of employment for any reason, Employee agrees not to undertake any employment or activity competitive with the company's business." Ex. 3, ¶5.

Second,  the Noncompete Agreement states that "for a period of one year thereafter [the term], Employee agrees that he will not, directly or indirectly…" attempt to solicit customers. Id., ¶6.

Third, the Noncompete Agreement also states that following the term of the agreement, "for a period of one year thereafter, Employee agrees that he will not,

---

[2] Id. ("[W]e conclude that a contractual provision imposes a restraint of a substantial character if it significantly or materially impedes a person's lawful profession, trade, or business. To meet this standard, a provision need not completely prohibit the business or professional activity at issue, nor does it need to be sufficient to dissuade a reasonable person from engaging in that activity. But its restraining effect must be significant enough that its enforcement would implicate the policies of open competition and employee mobility that animate section 16600.") (citations omitted)

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

directly or indirectly" solicit any employees to terminate their employment with KTI. Id., ¶8.

These prohibitions on Palmersheim's ability to practice his trade in the hydraulics industry are illegal per se under California law. To the extent that Plaintiff argues these void provisions should be severed, that argument should fail given the illegality of the contract. "Under California law, a court has discretion to either sever an unconscionable provision from an agreement, or refuse to enforce the agreement in its entirety." Pokorny v. Quixtar, Inc., 601 F.3d 987, 1005 (9th Cir. 2010) (citations omitted). "In exercising this discretion, courts look to whether the 'central purpose of the contract is tainted with illegality' or 'the illegality is collateral to [its] main purpose.'" Id.; see also Ortolani v. Freedom Mortg. Corp., No. EDCV171462JGBKKX, 2017 WL 10518040, at *7 (C.D. Cal. Nov. 16, 2017) (refusing to sever agreement with several unenforceable clauses).

The unenforceability of non-competes in California is not new. And yet, Plaintiff's pleading shows that it had an employee sign an unenforceable, void contract in 2014. Compl., Ex. 3. The Court should void the Noncompete Agreement where it is fatally tainted by its numerous unenforceable provisions drafted in contravention to California law.

### 5. The Complaint Does Not State A Claim for Unfair Competition

The Complaint also fails to state a claim for unfair competition. When, as here, "a plaintiff who claims to have suffered injury from a direct competitor's "unfair" act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999). As the Cel-Tech Court explained, the purpose of the "unfair" prong is to protect

against unfair competition, not to hold *competitors* liable who have not violated antitrust law.  See id.   KTI has not attempted to plead any such "incipient violation" of antitrust law by Defendants, and thus its claim for unfair competition fails to state a claim.

Likewise, KTI's claims that Defendants have acted under the "fraudulent" or "unlawful" prongs of the Section 17200 also fail.  KTI, as a competitor, may not avail itself of the fraudulent prong as it is not the class of persons whom the statute was designed to protect.  "[T]here is no case authority that 'fraudulent' business acts are separately actionable by business competitors absent a showing that the public, rather than merely the plaintiff, is likely to be deceived." Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc., 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001).

As discussed herein, each and every potential count of liability against Defendants fails to state a claim, meaning there is no foundational claim upon which Plaintiff may rely in asserting a claim under the unlawfulness prong.   This count should be dismissed for failure to state a claim.

**6.     The Complaint Does Not State A Claim for Trade Secret Misappropriation**

"To state a claim for trade secret misappropriation under the [Title 18 U.S.C. § 1836] and [California Civil Code § 3426], a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." Cisco Sys., Inc. v. Chung, 462 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020) (citing Alta Devices, Inc. v. LG Elecs., Inc., 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018). "At the pleading stage, a plaintiff need not 'spell out the details of the trade secret,' however, it must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" Agile Sourcing Partners, Inc. v. Dempsey, No. EDCV21773JGBSPX, 2021

WL 4860693, at *6 (C.D. Cal. July 15, 2021) (citing <u>Alta Devices, Inc.</u>, 343 F. Supp. 3d at 881). Additionally, a plaintiff must demonstrate that its alleged trade secret information (1) is not "readily ascertainable through proper means," (2) "derives independent economic value," and that (3) the plaintiff took "reasonable measures to keep such information secret." <u>Id.</u> (citing 18 U.S.C § 1839(3)).

Plaintiff's claim under the DTSA fails because it has failed to identify the alleged trade secrets with sufficient particularity.  In describing what "trade secrets" a former employee allegedly took, a Plaintiff cannot rely upon "catchall phrases" or simply identify categories of documents as Plaintiff has done.  <u>See InteliClear, LLC v. ETC Global Holdings, Inc</u>., 978 F.3d 653, 658 (9th Cir. 2020) (citations omitted). Here, Plaintiff pleads *only* in general terms, alleging that:

> Plaintiff KTI alleges, that such trade secret information includes, but is not limited to, Plaintiff KTI product designs and specifications, customer/distributor contact information lists, specific customer pricing and customer preferences for numerous KTI products, KTI supplier information, cost figures, proprietary information relating to KTI's product, including but not limited to KTI's Hydraulic Circuit 115, which embodies Plaintiff KTI's '599 Patent and '765 Patent, business plans, manufacturing know-how, business negotiations, market information, product information, quality standards, financial and cost information, pricing information, pricing sheets, sales and marketing strategies, scientific and technical information, information relating to existing and prospective customers and competitors, sales meeting strategies, intellectual property strategies, and other proprietary information of Plaintiff KTI (*i.e.,* Plaintiff KTI's "Confidential Information").

Compl., ¶57. Such "broad, categorical terms" such as "business plans," "product information," "business negotiations" could have been taken directly from cases where such generic descriptions engendered dismissal.  <u>See AlterG Inc. v. Boost Treadmills LLC</u>, 388 F. Supp. 3d 1133, 1145 (N.D. Cal. 2019) (<u>citing Vendavo, Inc. v. Price f(x) AG</u>, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018).

For instance, in Vendavo, the Northern District of California "determined that the plaintiff failed to sufficiently allege its trade secret claim where it claimed the defendant had misappropriated trade secrets including 'code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives, 'negative knowhow' learned through the course of research and development, and other information related to the development of its price-optimization software, including ideas and plans for product enhancement.'" Agile Sourcing Partners, Inc. v. Dempsey, No. EDCV21773JGBSPX, 2021 WL 4860693, at *7 (C.D. Cal. July 15, 2021) (citing 2018 WL 1456697, at *3-*4 (N.D. Cal. Mar. 23, 2018)).  Similarly, in Agile Sourcing, the Central District held that a plaintiff failed to state a claim under DTSA where it only alleged that the trade secrets "include[d], among others, pricing data, customer lists, contract proposals, invoice management proformas setting out pricing strategy and profitability for specific projects, and equipment rental process diagrams indicating customer spend habits." Id.

Plaintiff's descriptions of the "trade secrets" as "includ[ing], but [] not limited to" (Compl., ¶57) sinks their trade secret claim further because such a broad list, without limitation, fails to pass the reasonable particularity test to adequately give Defendants notice of the claims against which they must defend.  See Invisible Dot, Inc. v. DeDecker, No. 2:18-cv-08168-RGK-RAO, 2019 WL 1718621, at *6 (C.D. Cal. Feb. 6, 2019) ("Plaintiff's laundry list of possible trade secrets—a list that is, by its own admission, without limitation—encompasses far more than its IP."); see also Emazing Lights LLC v. De Oca, No. SACV-15-1561 (AG) (Ex), 2016 WL 3658945, at *2 (C.D. Cal. Jan. 7, 2016) (finding that when the definition of trade secrets "'include[s], but [is] not limited to,' the enumerated items . . . [a]ny piece of information could potentially be labeled a trade secret," and granting defendant's motion to dismiss on that basis).  This claim must be dismissed.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

VP/#55270197.3

**7.    The Complaint Does Not State A Claim for Patent Infringement of U.S. Patent No. 10,760,599 or U.S. Patent 11,149,765**

To plead direct infringement of a patent, "a plaintiff must allege facts sufficient to permit the Court to infer that the accused product infringes each element of at least one claim." CIPM, LLC v. Stryker Corp., No. 8:20-cv-02364-JLS-ADS, 2021 WL 3362027, at *2 (C.D. Cal. June 29, 2021) (J. Staton) (quotation omitted); FootBalance System Inc. v. Zero Gravity Inside, Inc., No. 15-1058, 2016 WL 903681, at *2 (S.D. Cal. Feb. 8, 2016) (explaining that Rule 8 "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements of a cause of action's elements") (citation omitted). "[A] plaintiff cannot assert a plausible claim for infringement under the Iqbal/Twombly standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1353 (Fed. Cir. 2021). Here, the claims of patent infringement are fatally deficient for at least three reasons.

First, the Complaint fails to plausibly allege that the accused products infringes every elements of at least one claim from either the '599 patent or the '765 patent. The Complaint does not so much as identify a single claim from either the '599 patent or the '765 patent that is allegedly infringed, much less articulate how the accused products purportedly infringe every element of one claim of either asserted patent. Aside from vague and conclusory statements, the Complaint is devoid of factual allegations to put the Defendants on notice of what activity is allegedly being infringed. Instead, the Complaint contains nothing more than images and descriptions of the accused product, without any assertion as to *how* that accused product purportedly corresponds to any claim of the two asserted patents. Compl.,¶ 48. Indeed, Plaintiff's bald assertion that the "Accused Products incorporate and literally infringe one or more of the claims set forth in Plaintiff KTI's '599 Patent and/or '765

Patent" renders it ambiguous whether both patents are even asserted. Id., ¶ 46. This is insufficient and fails to provide notice to Defendants as to how the accused products purportedly infringe (much less what the accused products purportedly infringe).

In Sanho v. Intelliarmor, Plaintiff Sanho Corp. brought a patent infringement claim related to five patents which covered hardware devices and connection ports. No. 820CV00735JLSDFM, 2020 WL 6153265, at *1 (C.D. Cal. Sept. 25, 2020). Specifically, the plaintiff alleged that the defendants sold, advertised, or offered for sale "certain products that infringed" on its patents. Id. However, Sanho failed to specify "which of the [patent's] seventeen claims [were] at issue… nor [did] it describe any of the Accused Products named in the [complaint] or identify any of their infringing features." Id. Based on these deficiencies, this court held that the plaintiff in Sanho failed to state an infringement claim because the complaint, "contain[ed] no factual allegations identifying the specific [patent] claim, or claims, at issue or the infringing features of the Accused Products." Id. KTI's complaint fails for the same reason as Sanho's —KTI's complaint merely alleges that the Defendants' *product* infringes on the '599 and '765 patents, but utterly fails to explain which, if any, *claims* of the '599 or '765 patents have been infringed or articulate an explanation for that purported infringement. To the extent the Complaint attempts to assert indirect infringement, it fails for at least the same reasons.

Second, the Complaint fails to articulate patent infringement claims against Nordlof, Peterson, Palmersheim, or Thurman. The only accused products identified in the Complaint are those purportedly manufactured and sold by MTE. The Complaint does not plausibly assert that these individual defendants committed any infringing act beyond those of which MTE is accused. Ninth Circuit courts have consistently held that individual corporate officers, shareholders, and employees are personally liable for the corporation's patent infringement only when they are a

"moving, active conscious force" behind the corporation's infringement. See, e.g., International Mfg. Co. v. Landon, Inc., 336 F.2d 723 , 728-29 (9th Cir. 1964).  As the Complaint lacks plausible assertions that these individuals were so intimately involved in the purportedly infringing conduct, they must be dismissed.

Third, the Complaint's claim of willful and induced patent infringement must be dismissed, as the Complaint does not plausibly plead that any named defendant had knowledge of the accused patents prior to the commencement of this litigation. "[A] allegation of willful infringement must either be made based on the accused infringer's pre-litigation knowledge, or be maintained only if the patentee seeks a preliminary injunction." McRO, Inc. v. Namco Bandai Games Am., Inc., 23 F. Supp. 3d 1113, 1117 (C.D. Cal. 2013) (citing In re Seagate Tech., LLC, 497 F.3d 1360 , 1374 (Fed. Cir. 2007)); see also WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages.").  Similarly, a claim of indirect patent infringement (i.e., inducing or contributing to infringement by others) requires plausibly pleading that the accused knew of the patent.  Commil USA, LLC v. Cisco Sys., Inc., 575 U.S. 632, 639 (2015) ("In contrast to direct infringement, liability for inducing infringement attaches only if the defendant knew of the patent and that the induced acts constitute patent infringement…. [l]ike induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement.") (internal citations omitted).

Here, the Complaint does not assert that any named defendant knew of the asserted patents, either prior to the service of the Complaint or thereafter.  At most, the Complaint asserts that Palmersheim "had access to and possession of" Plaintiff's purported confidential information, including "proprietary information relating to KTI's Hydraulic Circuit 115 which embodies Plaintiff KTI's '599 Patent and '765 Patent."  (Complaint at ¶ 32.). This does not amount to alleging Palmersheim knew of these asserted patents, and the Complaint makes no allegation that any other named

defendant had any knowledge of (or reason to know of) the asserted patents. Because the Complaint fails to plausibly allege the requisite knowledge, these claims must be dismissed. See, e.g., Intellectual Pixels Ltd. v. Sony Interactive Entm't LLC, No. SACV 20-1422 JVS (KESx), 2020 WL 7872961 (C.D. Cal. Nov. 20, 2020) (dismissing claims of induced and willful infringement).

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court dismiss Plaintiff's Complaint, or, in the alternative, transfer this action to the Northern District of Illinois.

Dated:        March 18, 2022           VEDDER PRICE (CA), LLP


By: /s/ Deborah A. Hedley
       Michael Quinn
       Deborah A. Hedley

Attorneys for Defendants
MECHANICAL TOOL &
ENGINEERING COMPANY,
GREGORY STAFFORD NORDLOF,
GERARD M. PALMERSHEIM,
DAVID E. PETERSON and
RICHARD THURMAN

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

VP/#55270197.3